## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DONALD HENSLEY, JR. (#112218)**                           **CIVIL ACTION NO.**

**VERUS**                                                                        **21-517-SDD-SDJ**

**CHRISTOPHER HARRELL, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 14, 2024.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD HENSLEY, JR. (#112218)                CIVIL ACTION NO.

VERUS                                         21-517-SDD-SDJ

CHRISTOPHER HARRELL, ET AL.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed on behalf of Defendants Christopher Harrell and David Hueing.[1] The Motion is opposed.[2] For the following reasons, it is recommended the Motion be denied.

**I.  Background**

Hensley filed suit under 42 U.S.C. § 1983 against Harrell and Hueing, alleging Defendants failed to protect him from violence at the hands of another inmate, "Maurice," in violation of the Eighth Amendment on May 20, 2020, when "Maurice" was placed in Hensley's cell.[3] Hensley filed multiple amended complaints, but the operative complaint at this juncture, and the complaint which the Motion to Dismiss is based upon, is at R. Doc. 38. Hensley requests monetary relief.[4]

**II.  Law & Analysis**

   **a.  Standard of Review**

In *Bell Atlantic Corp. v. Twombly*,[5] and *Ashcroft v. Iqbal*,[6] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the

---

[1] R. Doc. 40.
[2] R. Doc. 44.
[3] R. Docs. 1, 12, & 38, p. 2.
[4] R. Doc. 38, p. 9.
[5] 550 U.S. 544 (2007).
[6] 556 U.S. 662 (2009).

speculative level."[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[10] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the Complaint."[12] Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[13] Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[14] The task of the court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[15] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[16] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[17]

---

[7] *Twombly,* 550 U.S. at 555.
[8] *Iqbal,* 556 U.S. at 678, (quoting *Twombly*, 550 U.S. 544).
[9] *Id.*
[10] *Id.* at 679.
[11] *Id.* at 678 (internal quotation marks omitted).
[12] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[13] *Id.* (citation omitted).
[14] Fed. R. Civ. P. 8(a)(2).
[15] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[16] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[17] *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### b. Defendants are Not Entitled to Qualified Immunity

Defendants have asserted that they are entitled to qualified immunity, a defense often asserted by defendants against claims for violations of constitutional rights, such as Plaintiff's.[18] Employing a two-step process, the defense operates to protect public officials who are performing discretionary tasks.[19] Viewing the facts in the light most favorable to the plaintiff, courts evaluating the defense consider whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time the violation occurred. Courts have discretion to decide which of the two prongs of the analysis to address first.[20] "When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation…to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery."[21] "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[22]

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates.[23] Although prison officials generally "have a duty ... to protect prisoners from violence at the hands of other inmates,"[24] "[p]rison officials are not . . . expected to prevent all inmate-on-inmate violence."[25]

---

[18] R. Doc. 40-1, pp. 5-14.
[19] *Huff v. Crites*, 473 Fed.Appx. 398, 399 (5th Cir. 2012).
[20] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[21] *Kelson v. Clark*, 1 4th 411, 416 (5th Cir. 2021) (internal quotation marks and citations omitted, alterations in original).
[22] *Id.*
[23] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).
[24] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[25] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir 2003).

3

"Deliberate indifference" is the standard applied in evaluating a failure to protect claim. This term has been defined as including an element of "subjective recklessness" as used in the criminal law.[26] An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[27] A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to avoid it.[28] In other words, for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[29] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[30] Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[31] Deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[32]

The operative complaint does not vary substantially from the original complaint screened by this Court, based upon which this Court found that Hensley had stated a claim for failure to protect. In that Report and Recommendation, the Court specifically noted as follows:

---

[26] *Farmer*, 511 U.S. at 837.
[27] *Id.*
[28] *Id.* at 847.
[29] *Johnston*, 786 F.2d at 1259.
[30] *Farmer*, 511 U.S. at 837.
[31] *Id.* at 838. See also, *Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001), *citing Farmer*, 511 U.S. at 838.
[32] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019). See also *Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

4

    Hensley has stated sufficient facts to proceed on a claim for failure to protect. Hensley alleges that on May 20, 2020, Harrell attempted to place another inmate named Maurice in Hensley's cell. Hensley allegedly notified Harrell that he did not want Maurice placed in his cell because the two had "beef." Hensley further specified that Maurice had threatened Hensley's life approximately five to six months before the date of the incident. Harrell activated his beeper, prompting Hueing and another officer, Hayes, to come to Hensley's cell.
    Hayes berated Harrel for activating his beeper, during which time Hueing went to Hensley's cell and asked him what was going on. Hensley explained that he and Maurice had "beef," so Hensley did not want Maurice in his cell for fear of an altercation. Hensley added that when Maurice previously threatened Hensley's life he told Hensley to "get something to work with when [we] see each other again." Hueing proceeded to threaten Hensley by placing his hand on his bottle of chemical agents and told Hensley that Maurice had to go into Hensley's cell. Hensley proceeded to tell Hueing "you would put my life in danger like that when I'm telling you that we got 'beef'." Due to the threat of being sprayed with chemical agent, Hensley retreated and stated to Hueing that he could put Maurice into Hensley's cell. Hensley avers that Harrell and Hueing then worked together to place Maurice into Hensley's cell. According to Hensley, as soon as the last shackle was removed from Maurice, he attacked Hensley, repeatedly punching him in the face. Harrell and Hueing promptly intervened and separated Hensley and Maurice. Hensley suffered injuries including a bleeding nose, mouth, and under his right eye. Hensley was seen by an E.M.T. and was referred to the R.E. Barrow Treatment Center for further evaluation because his eye was severely swollen.
    The Court finds the foregoing facts sufficient to state a claim on screening. Though Maurice was not on Hensley's enemy list prior to the incident, he warned Harrell and Hueing that Maurice posed a threat to him and should not be placed in his cell. Accordingly, Hensley should be allowed to proceed with this claim.[33]

The foregoing still remains an accurate representation of the facts, based upon which the Court already found Hensley stated sufficient facts to proceed past the pleadings stage.[34] Defendants appear to argue that Harrell cannot be held liable because he called a supervisor and, essentially, withdrew from participation when the supervisor arrived, but the amended complaint clearly states that Harrell assisted in removing Maurice's leg shackles and placing him in the cell; therefore, Harrell actively participated in the placement of Maurice in Hensley's cell.[35] Defendants

---

[33] R. Doc. 13.
[34] *See* R. Docs. 13 & 14.
[35] Defendants' assertion that Harrell is entitled to qualified immunity because he referred the matter for further investigation or took other appropriate administrative action is misplaced. R. Doc. 40-1, p. 13. The case cited by Defendants involves a defendant who did not have the authority to transfer an inmate, so she informed another officer

also seek to have this Court accept their naked assertion that Defendants did not draw the inference that a significant risk of serious harm existed, but nowhere in Hensley's amended complaint does he state that Defendants did not draw the inference that Maurice posed a serious risk of harm to Hensley, nor can the Court infer from the facts alleged that Defendants did not draw the inference.[36] Further, Defendants assertion that Harrell's statement "f**k this bulls**t you don't want him in the cell" demonstrates that he did not actually draw the inference that a substantial risk of serious harm existed is unsupported by case law. To the contrary, the Fifth Circuit has found that similar statements were sufficient to demonstrate that Defendants had actually drawn the inference that a substantial risk of serious harm existed; specifically, in *Purvis v. Johnson*,[37] the Fifth Circuit found that the following allegations sufficed:

> [T]he amended complaint states…plaintiff tried to speak to Dennis Markgraf (Lieutenant), John Solis (Sergeant), Israel Reyna (Sergeant), [and] Larry Goucher (Sergeant), concerning the issues and the danger at hand and that plaintiff was in fear of attack…. But their response was that [sic] they either didn't want to hear it or they were just plain out not interested[.] Lieutenant Markgraf told me[, "]Inmate, shut the f —— up and go back to your building[."] Sergeant Solis reponded [sic] with "Oh what you scared inmate.["] Sergeant Reyna and Sergeant Goucher ... would not even listen.[38]

---

to contact an officer who was authorized to transfer the inmate if a transfer was appropriate. *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir 2006). That is not the case here, Harrell was actively looking for a cell to place Maurice in because he had the authority to do so, and when Hensley protested, Harrell beeped a supervisor for assistance. There is no indication in the complaint that Harrell activated his beeper to obtain advice regarding whether it was appropriate to place Maurice in the cell; rather, reading the amended complaint in the light most favorable to plaintiff, it appears Harrell activated his beeper to obtain assistance in gaining Hensley's compliance to place Maurice in Hensley's cell, not to obtain assistance in further investigating whether it was appropriate to place Maurice in Hensley's cell or assistance in determining whether a threat existed. Further, it is not a foregone conclusion that ordering further investigation is *per se* reasonable, though that *may be* a reasonable method of addressing a risk. *See Johnson v. Johnson*, 385 F.3d 503, 526-527 (5th Cir. 2004) ("Certain UCCs responded to Johnson's claims by taking action such as ordering further investigation or separating Johnson from a particular inmate who had been threatening him. Those responses were unavailing, but they may well have been reasonable methods of addressing the risk that Johnson faced."). The pleadings simply do not indicate that further investigation was performed or to ascertain whether Defendants actually drew the inference that Maurice posed a threat to Hensley; rather, it appears Hueing was called in for assistance, not for further investigation, guidance, or to wholly take over and ascertain the situation for himself.
[36] *See Waller v. Terry County, Texas*, No. 21-189, 2023 WL 5333237, at *11 (N.D. Tex. Aug. 18, 2023) (noting at the motion to dismiss stage, courts refrain from considering evidence and instead only decide whether a plaintiff has pled sufficient facts to support a claim that the defendants had drawn an inference that a substantial risk of harm existed).
[37] 78 Fed.Appx. 377, 379 (5th Cir. 2003).
[38] *Id.* at 379.

6

The Fifth Circuit found both that those statements sufficed to demonstrate Defendants actually drew the inference and further stated "these facts, if taken to be true, establish that prison officials were deliberately indifferent to the substantial risk of serious harm posed by housing Purvis with Jones. Thus, the district court's dismissal of Purvis' failure-to-protect claim was improper." In *Purvis*, the plaintiff had complained that his cell mate was racist, threatened and bullied him, and that he scared the plaintiff.[39] Those statements are more vague than the statements made by Hensley in this case, which provided specifically, that "Maurice" warned Hensley that he better have "something to work with" the next time the two saw each other; if the above statements were sufficient to proceed on a failure to protect claim, the more specific threat made in this case certainly suffices.

Defendants point to their quick actions to intervene after the altercation began in attempt to negate the failure to protect claim, but as this Court has recognized, failure to protect and failure to intervene claims, though related and often brought together, are distinct, and one can exist without the other.[40] Further, quick intervention does not negate a claim for failure to protect.[41] Accordingly, Hensley has stated sufficient facts to establish that a constitutional violation occurred.

Regarding the second prong of the qualified immunity analysis, it was clearly established at the time of the violation in 2020 that inmates have the right to be safe from assaults by other inmates,[42] and contrary to what Defendants imply,[43] the qualified immunity analysis does not require that the exact or identical conduct have been held unlawful prior to the defendant's

---

[39] *Id.* at 379.
[40] *Outley v. Batiste*, No. 17-1782, 2019 WL 4265075 at * 4 (M.D. La. Aug. 23, 2019).
[41] *Id.* at *4.
[42] *See Acker v. Grenada County*, No. 95-67, 1996 WL 407985, at *3 (N.D. Miss. May 21, 1996) ("Certainly, there was a clearly established constitutional right to be safe from assaults from other inmates in *June of 1994*.") (emphasis added) citing *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citing *Smith v. Wade*, 461 U.S. 30 (1983)).
[43] R. Doc. 40-1, pp. 14-15.

7

actions.[44] In support of their argument, Defendants cite to *Coleman v. Tanner*[45] for the proposition that "a prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the inmate," which is taken wholly out of context and not applicable to this case.[46] In *Coleman*, the claim Defendants' refer to involved largely generalized threats allegedly made by numerous inmates because the plaintiff had previously cooperated with DOC officials.[47] *Coleman* is more aptly described as a situation where the plaintiff had a generalized fear for his safety due to his previous cooperation with DOC, which is not the case here, where Hensley noted a particular interaction with a specific inmate that led him to fear being in close proximity with that inmate. Hensley's statements were not vague, as discussed above, and it was clearly established at the time of the alleged violation that officers could not place one inmate in a cell with another when one has provided facts from which a reasonable person could conclude that the inmates pose a risk to each other. Accordingly, Hensley's claims are not subject to dismissal.

---

[44] *Delaughter v. Woodall*, 909 F.3d 130, 139-140 (5th Cir. 2018) ("it is not necessary for controlling precedent to have held that the official's exact act was unlawful.") (citations omitted).
[45] 09-7346, 2010 WL 2009445, at *9 (E.D. La. 4/27/10).
[46] R. Doc. 40-1, p. 14. Defendants also mischaracterize Hensley's amended complaint, chalking up his reports to Harrell and Hueing to a "vague assertion that two inmates have 'beef,' with no further explanation," (R. Doc. 40-1, pp. 12 & 14) which is inaccurate—the amended complaint clearly states that Hensley provided more in depth information to the Defendants regarding the interaction Hensley had with Maurice that caused him to fear for his safety than a vague assertion of "beef." R. Doc. 38. Additionally, as noted elsewhere, the assertion that "Harrell in fact did not place Maurice in his cell" is misleading, as Harrell assisted in removing the shackles from Maurice, calling to the control room to open Hensley's cell and placing Maurice in Hensley's cell. R. Docs. 40-1, p. 13 & 38, pp. 2-3.
[47] *Coleman*, 2010 WL 2009445, at *9.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the Motion to Dismiss[48] filed by Defendants Christopher Harrell and David Hueing be **DENIED** and that this matter be referred back to the undersigned for further proceedings.

Signed in Baton Rouge, Louisiana, on February 14, 2024.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[48] R. Doc. 40.